UNITED STATES DISTRICT COURT　　　　SOUTHERN DISTRICT OF TEXAS

RANDELL GLEN LAWS, §
TDCJ 1256902, §
　　　　　Plaintiff, §
　 §
*versus* § Civil Action H-07-3072
　 §
JULIA LAWSON, *et al.*, §
　 §
　　　　　Defendant. §

# Opinion on Dismissal

　　Randell Glen Laws filed a complaint for civil rights violations. 42 U.S.C. § 1983. He is proceeding as a pauper. 28 U.S.C. § 1915. Laws sues Physicians Assistant Julia Lawson, Dr. Ernestine Julye, Warden B. Lewis, and Guy Smith, TDCJ Medical Administrator.

1. *Claims*

　　Laws is held in a Texas prison. The gist of Laws's complaint is that the defendants will not give him ibuprofen or enough ibuprofen for his medical conditions though specialists have recommended ibuprofen and Laws has determined it is suitable and safe for him. He claims that Lawson and Dr. Julye refused to dispense medication orders issued by other doctors at the University of Texas Medical Branch in Galveston (UTMB) and Lawson removed the orders from the prison clinic computer. Unit medical providers, including Lawson and Dr. Julye, did this without consulting the UTMB doctors or Laws. The warden and others failed to monitor this situation. UTMB policy says inmates should not be kept in pain when safe, effective means are available to alleviate the pain.   Laws's allegations in his prison grievances attached to his complaint follow. Laws has a cystic growth on his left testicle and back problems which keep him in constant discomfort on a good day. He suffers serious pain on a bad day. Laws has bone spurs on his vertebrae which cause pain, migraines, and pinched nerves. Specialists at the UTMB have often sent orders for ibuprofen with Laws when sending him back to his assigned unit.

　　When Laws complained about Lawson's refusal to give him ibuprofen, Lawson and Dr. Julye responded that ibuprofen is an "instant death bleed-out in your sleep" drug. Laws says this opinion about ibuprofen is ridiculous. He has been safely taking ibuprofen for 15 years. Laws states in his grievance that "any right-minded physician has the common sense, good graces, and

professional courtesy not to override another physician's orders." Warden Lewis responded to Laws's step 1 grievance and stated that medical staff said they inadvertently failed to put the medicine renewals in the computer and that after Laws filed the grievance, a medical provider saw him and renewed his medications.

Laws filed a Step 2 grievance in which he stated Dr. Vincent (apparently a UTMB physician temporarily on Laws's unit) had given Laws a 30-count ibuprofen card, good for 60 days. Laws stated that Dr. Vincent told him that since Lawson had a habit of countermanding doctors' orders, it would do no good to give Laws any renewals for ibuprofen. Laws says that unit medical providers repeatedly remove from the computer the UTMB medicine orders and that the medications were not "inadvertently" not put in the computer, as the first grievance response stated. Laws also says in the grievance that Dr. Vincent told him that he has a different opinion from Lawson and Dr. Julye concerning ibuprofen. Smith responded to Laws's step 2 grievance with the following:

> According to clinical record documentation, a health care provider ordered ibuprofen 600 milligrams three times a day as needed as Keep-On-Person. Thirty pills were ordered to be dispensed for sixty days. If you feel that your medical condition warrants further assessment for pain management, you may wish to submit a Sick Call Request to the facility medical department. Be aware that recommendations that are made by specialists are just that, recommendations. It is the clinical decision of the provider at the facility level to determine the prescription of medication.

Laws seeks damages and an order directing Lawson and Dr. Julye to give Laws the medications which the UTMB doctors ordered.

Laws elaborates as follows in his clarifying statement (6). Defendants ignored obvious conditions. Defendants failed to provide treatment for diagnosed conditions. Defendants delayed treatment. Defendants interfered with access to treatment. Their medical judgment was not medical. Unit medical providers allowed Laws to see specialists, then did not follow the recommendation of the specialists. Defendants knowingly allowed Laws to endure serious chronic pain when x-rays clearly showed spinal-cervical vertebrae bone spurs. UTMB has computer tomography-ultrasound records which show testicular cystic growth which causes chronic pain. The UTMB specialists sent orders to defendants for care and medications for several months and the specialists entered these orders in the hospital computer because a PA at the unit ignored or countermanded the orders.

Laws makes these additional claims in his summary judgment motion. (15). Officials transferred Lawson to another unit, but her replacement, Charles Nagel, follows the same policies.

The practice of not following specialists' recommendations has left Laws without pain medications for weeks, even months.

2. *Defendants' Summary Judgment Showing*

Dr. Betty Williams states that doctors diagnosed Laws with testicular cancer before his imprisonment. Defendants' Summary Judgment Motion (26), Exh. C, p.1. In 2003, doctors performed an orchiectomy followed by radiation therapy. *Id.* Unit health care providers referred Laws to specialists at UTMB. They conducted tests which showed no return of his cancer. *Id.* The UTMB doctors recommended non-narcotic medications, specifically Ibuprofen for 3-6 months for residual pain. *Id.* However, primary care providers decided to lower the amount of the ibuprofen. *Id.*, p. 2. Dr. Williams explains that orders from UTMB are reviewed and sometimes changed for various reasons. Unit medical providers changed Laws's prescription because they knew that he has contraindications to the use of large quantities of non-steroidal anti-inflammatory drugs. *Id.* Doctors diagnosed him with peptic ulcers at age 20. During his entire stay in prison, medical personnel provided Laws chronic treatment with Zantac twice daily for abdominal pain. They doubled this because of his abdominal pain, and later switched him to Prilosec because of persistent symptoms. In early 2008, medical personnel referred Laws to gastrointestinal specialists for possible ulcer disease. *Id.*

Dr. Williams says that recently researchers have learned that non-steroidal anti-inflammatory drugs have significant risks, including gastrointestinal bleeding. Laws's medical records show that Defendants were aware of Laws's history of ulcer disease and tried to school him and lower his use of non-steroidal anti-inflammatory drugs because of the risk of gastrointestinal bleeding. Defendants' Summary Judgment Motion, Ex. B, p. 36. Laws's pharmacy and medical records show that nonetheless, he is frequently prescribed ibuprofen, and that his requests for it are generally honored. *Id.*, Exs. B & C.

3. *Laws's Response*

Laws says Williams's affidavit is misleading and her review of his records was cursory. She did not consult with anyone involved in the matters underlying Laws's complaint. The orders by the UTMB specialists were for cystic growths in Laws's testicle and back problems, not for postoperative groin pain. Laws says the initial order for 800 mg. of ibuprofen was for six months, not three months, and that these UTMB orders were altered, rarely filled, and eventually ignored.

UTMB specialists resorted to ordering acetaminophen for Laws, because unit providers did not give him ibuprofen. Laws explains that unit medical providers sent him to UTMB specialists to insure that he received proper outpatient care on the same basis that he received proper outpatient care from unit providers. Therefore, he asserts, when they send him to a specialist who makes a medical decision, this leaves "no 'decision-making' room for under-qualified or non-qualified unit level personnel."

Laws says Dr. Williams misconstrues the facts about recent findings concerning risks attached to non-steroidal anti-inflammatory drugs. He says some individuals are more susceptible to adverse effects than others. Laws's blood work "markers are textbook perfect," so he follows usage directions and has no unusual problems. Inmates with money can buy their own ibuprofen. Laws's medical records have long incorrectly reflected his having peptic ulcer disease—he actually has hyperactive stomach disease. Laws has not had any upper GI tests that show an ulcer. Laws mentions an attempt to force him to take a psychotropic drug. Finally, Laws states the Defendants' reply to his claims and arguments does not address his other needs, such as his bone spurs.

4. *Analysis*

Laws's basic claim is that Lawson and Julye refused to fill medication orders issued by UTMB doctors. Laws's claim boils down to a disagreement about the necessity and appropriateness of giving him ibuprofen for his medical conditions. Disagreement with decisions about medical treatment does not state a claim for deliberate indifference under the Eighth Amendment. *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. (1999). Laws's allegations show only that Lawson and Dr. Julye refused to treat him the way he and other doctors thought he should be treated.

Lawson and Dr. Julye decided that ibuprofen was not appropriate for Laws although other doctors thought it was medically indicated. That is not deliberate indifference. *Stewart*, 174 F.3d at 534. Laws does not get to pick which doctor treats him or the medical treatment he receives. The grievance response shows that under prison policy the unit physician has the final say on treating prisoners.

Defendants' summary judgment evidence shows a lack of deliberate indifference. Medical providers saw and treated Laws often. The Defendants focused on Laws's testicular cancer and related matters in their summary judgment motion and Dr. Williams affidavit did not directly address Laws's back and bone spur problems, as Laws points out. However, the medical records

4

show that prison medical personnel treated these medical conditions. *See e.g.*, Ex. B, pp. 35, 37, 38, 41-47. The plaintiff must show that a defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Laws has not shown this.

Laws conclusorily claims Defendants ignored obvious conditions, failed to provide treatment for diagnosed conditions, delayed treatment, interfered with access to treatment, and knowingly allowed him to endure serious chronic pain when x-rays clearly showed spinal-cervical vertebrae bone spur tissues. He also conclusorily claims that by not following the recommendations of specialists, defendants had left Laws without pain medications for weeks and months. However, conclusory allegations unsupported by specific facts are insufficient to state a claim. *Davidson v. Georgia*, 622 F.2d 895 (5th Cir. 1980). Other than his assertions about changing UTMB orders, Laws makes no specific, factual allegations in support of these conclusory claims, much less raises a genuine issue of material fact on them.

Laws does claim with factual specificity that defendants did not provide him the specific medication he and UTMB specialists deemed appropriate. However, that claim, taken as proven, does not show deliberate indifference. *Domino*, 239 F.3d at 756. Deliberate indifference requires a showing that a defendant was subjectively aware of and disregarded a risk of serious harm to the inmate. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006). Laws has not shown this. Laws has not alleged or shown that the defendants intentionally treated him incorrectly. His claims about disagreements among medical personnel on whether to use ibuprofen and the appropriate dosage do not show deliberate indifference to serious medical needs. *Stewart v. Murphy*, 174 F.3d 530, 535 (5th Cir.1999).

Where the medical records show consistent care, a claim that defendants were deliberately indifferent to his serious medical needs is without merit. *See Varnardo v. Lynaugh*, 920 F.2d 320 (5th Cir. 1991). Laws has not defeated Defendants' summary judgment showing and has not shown deliberate indifference. *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (the deliberate indifference standard is an "extremely high" one to meet).

The summary judgment record does not raise any facts material to Laws's claims. Defendants' Motion for Summary Judgment (26) is granted.

5. *Conclusion*

Plaintiff's Motion for Summary Judgment (15), Plaintiff's Motion to Deny Defendants' Motion for Summary Judgment (27), Plaintiff's Motion for Reconsideration of Motion for Summary Judgment (28) are denied.  Defendants' Motion for Rule 7(a) Reply on Qualified Immunity (21) is denied as moot.  Defendants' Motion for Extension of Time to File Summary Judgment (22) is granted to the date they filed the motion.  Defendants' Motion to File Motion for Summary Judgment Out of Time (25) is granted.  Plaintiff's Motion for Copy of Medical Records (23) is denied because the court did not receive the copies Laws failed to receive and the court decided the summary judgment motion only on the medical records the court and Laws received.  *See King v. Hogan*, 31 F.3d 344, 346 (5th Cir. 1994) (responding party "must show how the additional discovery will defeat the summary judgment motion.").

This case is dismissed.

Signed August 23, 2008, at Houston, Texas.

_____
Lynn N. Hughes
United States District Judge